IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE LAVOIE-FERN,<br>SHERRY KONWALER,<br>HARVEY HOROWITZ, and<br>MARIE BRUEN,<br><br>   Plaintiffs,<br><br>-vs-<br><br>THE HERSHEY COMPANY,<br><br>   Defendant. | CIVIL ACTION<br><br>No. _____<br><br>ELECTRONICALLY FILED<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs, JANE LAVOIE-FERN, SHERRY KONWALER, HARVEY HOROWITZ, and MARIE BRUEN, by their attorney, GRABOWSKI LAW OFFICES, LLP, as and for their Complaint, allege as follows:

## PARTIES

1. Plaintiff JANE LAVOIE-FERN is an individual with an address in Tacoma, Washington.

2. Plaintiff SHERRY KONWALER is an individual with an address in Soddy Daisy, Tennessee.

3. Plaintiff HARVEY HOROWITZ is an individual with an address in Lake Worth, Florida.

4. Plaintiff MARIE BRUEN is an individual with an address in Boston, Massachusetts.

5. Defendant THE HERSHEY COMPANY (hereinafter Defendant or "HERSHEY") is now, and at all times mentioned in this complaint was, a foreign corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 100 Crystal A Drive, Hershey, Pennsylvania 17033.

## JURISDICTION AND VENUE

6. The requirements for diversity jurisdiction under 28 U.S.C. § 1332(a)(1) are satisfied.

7. All plaintiffs and defendant are from different states and the amount in controversy is over $75,000.

8. Venue is proper in the Middle District of Pennsylvania under 28 U.S.C. § 1391(b)(1), since Defendant regularly does business in the district.

## FACTUAL BACKGROUND

9. Defendant HERSHEY is now, and at all times mentioned in this complaint was, in the business of producing and selling various food and beverage items, including certain black licorice products such as its Twizzlers and Good and Plenty brands.

10. Black licorice contains the compound glycyrrhizin (also known as glycyrrhizic acid), which is the sweetening compound derived from licorice root.

11. Glycyrrhizin can have very harmful effects on the body, such as causing potassium levels in the body to fall dramatically, and can create harmful imbalances in other minerals such as sodium.

12. As a result, consumption of black licorice can cause people to experience abnormal heart rhythms, high blood pressure, edema (swelling), lethargy, and/or congestive heart failure.

13. Many black licorice products in the United States use one or more synthetic ingredients that mimic the flavor and smell of the black licorice root and that are safer.

14. Defendant, however, has refused to use such substitutes, and instead continues to use the dangerous glycyrrhizin compound.

15. Due to documented cases, the Food and Drug Administration (FDA) has issued warnings that eating two ounces of black licorice per day for at least two weeks could prompt heart conditions in adults 40 and older.

16. The World Health Organization also recommends a maximum intake of 2 mg/kg per day of glycyrrhizic acid due to its potential adverse effects.

17. Despite these warnings, however, Defendant has refused to place any warnings on its black licorice products.

18. Upon information and belief, Defendant knew for years that its black licorice products posed a health threat.

19. For example, in 2013, a group of researchers from Chicago's Mercy Hospital and Medical Center, citing to various medical studies going as far back as to the 1970's, published a review in *Endocrinology and Metabolism* warning of the substantial threat that consumption of excess licorice posed to the cardiovascular system, including to the heart, due to the glycyrrhizin component contained therein.

20. In 2015, a case study published in *Pediatric Neurology* detailed the account of a 10-year-old boy who suffered seizures after eating black licorice products, and recommended that black licorice candy-makers list a recommended daily dose or warning on their packaging.

21. In 2018, Defendant was sued by a plaintiff in New York when its black licorice product was alleged to have caused permanent atrial fibrillation.

22. In September 2020, a 54-year-old Massachusetts construction worker died when his heart stopped after he had begun eating black licorice.

23. Despite this knowledge, Defendant did not place any warnings on its products, nor change any of the dangerous ingredients contained therein.

24. Defendant's black licorice products contain no warnings that consumption of the black licorice product can lead to heart conditions, low potassium, or any of the other conditions described above.

25. Plaintiffs are all individuals whose lives have been substantially and detrimentally impacted due to Defendant's failure to warn consumers of the dangers of its black licorice products.

26. Prior to the events discussed herein, Plaintiff JANE LAVOIE-FERN was a strong, healthy female in her 60s.

27. In or about the summer of 2019, JANE began eating HERSHEY's Good and Plenty black licorice product quite regularly.

28. In August 2019 JANE began feeling very tired. She found that she could no longer even walk around the block anymore. She couldn't function and couldn't do her normal activities. She started falling, and at times would pass out and couldn't be woken. She found herself to be always exhausted. She couldn't breathe, she couldn't walk, and her heartbeat was very off.

29. As a result of her falls, a number of which were very bad, JANE hurt her shoulders, elbows, and arms. She also hit her head a number of times and broke a tooth, and likely broke some bones and suffered some internal tears.

30. As a result, JANE went to the hospital.

31. At the hospital, JANE died and had to be resuscitated two times.

32. During the process of being brought back to life, JANE's ribs were broken.

33. JANE was in the ICU, and spent about 2 weeks in the hospital.

34. It turned out that her potassium levels were dangerously low, which had caused her condition.

35. After being discharged, JANE was put on all sorts of medications, including blood pressure medications.

36. JANE's blood pressure was dangerously high, and they were unable to get the blood pressure to go down or stabilize.

37. Then her blood pressure dropped to dangerously low as a result of all of the medication, and she nearly died again.

38. Every night JANE went to sleep terrified that she was going to be dead by the next morning, and she feared for herself and her family, and for what they were going through because of her condition.

39. JANE's heart has been permanently damaged, and she continues to be in recovery from her ordeal.

40. To this day, she does not have even close to the energy that she used to have.

41. It was months before JANE could even do simple activities, such as go up the stairs by herself to her bedroom.

42. Prior to this, JANE had never had any history of heart conditions or problems with her blood pressure.

43. Plaintiff SHERRY KONWALER was a strong, healthy female in her mid-60s.

44. In or about spring 2020, as a result of the COVID-19 pandemic, SHERRY was stuck at home, and as a result began eating more HERSHEY's Twizzlers black licorice than she used to.

45. SHERRY is diabetic, and so she used to eat a few pieces of black licorice to bring her sugar up.

46. SHERRY began feeling substantial pain, which lasted for months, but she could not figure out the cause.

47. In or about early fall 2020, SHERRY began to feel a pain in her back and a burning sensation in her chest, and she had terrible headaches.

48. When she would try to walk short distances, such as from the house to the garage, she was unable to breathe and would have to stop half-way.

49. She was unable to walk from the bedroom to the kitchen, and would just have to stand there in substantial pain until the pain subsided enough for her to continue walking.

50. SHERRY went and got a chest x-ray, and discovered that she had substantial edema and her lungs were filled with fluid.

51. SHERRY was admitted to the ER, where it was discovered that she had dangerously low potassium levels and now had heart failure and skyrocketing blood pressure.

52. SHERRY was in the hospital for nearly a week, and was put on blood pressure medications and medication to increase her potassium.

53. SHERRY's heart has not improved, and she now has permanent congestive heart failure.

54. She has to be very careful with her salt and mineral intake, and has never recovered from her ordeal.

55. Plaintiff HARVEY HOROWITZ was a strong, healthy male in his mid-70s.

56. HARVEY began eating black licorice Twizzlers because it was fat free and helped regulate his bowels.

57. In late spring of 2020 he began experiencing discomfort in his chest.

58. HARVEY got an echocardiogram, and was diagnosed with atrial fibrillation and was put on blood thinners.

59. He was instructed by his doctor to stop eating black licorice.

60. However, HARVEY's heart condition has not gone away, and now appears to be permanent.

61. As a result of this atrial fibrillation, HARVEY's entire quality of life has been detrimentally impacted.

62. HARVEY can no longer live as he used to, as he has to be in fear of engaging in activities or putting himself in situations of stress or anxiety for fear of causing a heart attack or stroke.

63. Additionally, he will now likely be on medication for the rest of his life.

64. Similarly, because of the blood thinner that he is now required to take, HARVEY is at risk of cutting himself and bleeding out to death, or even suffering internal bleeding.

65. This condition that HARVEY will now have to live with for the rest of his life causes HARVEY great pain and mental anguish, and prevents him from living his life as he has until now.

66. Plaintiff MARIE BRUEN was a strong, very healthy female in her mid-50s.

67. MARIE began consuming black licorice Twizzlers, and in the latter part of 2019, MARIE was hospitalized twice.

68. Her potassium levels were dangerously low, her blood pressure was at stroke level, and she was having all sorts of heart issues.

69. Her condition has improved since MARIE has ceased consuming the black licorice product, but she continues to have lingering heart effects.

70. When MARIE learned in September 2020 that the construction worker, someone her age who lived near her, had died from consuming Defendant's black licorice product, she realized that any tiny change of fate and that could have been her who had died instead.

## AS AND FOR A FIRST CAUSE OF ACTION: STRICT PRODUCTS LIABILITY

71. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "70" inclusive, as if more fully set forth herein at length

72. At all times mentioned in this complaint, Defendant's black licorice products posed substantial health risks to consumers like Plaintiffs, and thus was defective as to manufacture and warnings, causing the black licorice products to be in a dangerous and defective condition that made them unsafe for their intended use.

73. There were no warnings included with the black licorice products.

74. These black licorice products posed specific harms that were more dangerous than a reasonable consumer would expect.

75. The black licorice products were defective when they left Defendant's hands.

76. The defective condition of the black licorice products was a major and substantial factor in causing the injuries to Plaintiffs described above.

77. At the time of the occurrence of the injuries, the black licorice products were being used for the purpose and in the manner normally intended.

78. Plaintiffs would not have by the exercise of reasonable care discovered the defect or perceived its danger.

79. By the exercise of reasonable care Plaintiffs would not otherwise have averted their injury or damages.

80. Had there been an adequate warning on the black licorice products, Plaintiffs would have heeded the warning.

81. As a direct and proximate result of the defective and dangerous condition of the black licorice products described above, Plaintiffs suffered the injuries as described above.

82. Accordingly, as a direct and proximate result of the defective and dangerous condition of the black licorice products described above, Plaintiffs suffered general and special damages in an amount to be determined at trial, including for pain and suffering, mental anguish and emotional distress, disability, loss of enjoyment, loss of consortium, medical expenses, lost income, and loss of future earnings.

83. Additionally, because Defendant was aware for years of the risk that its products posed, but did nothing to change its ingredients or warn consumers of the danger of the products, Defendant demonstrated conscious indifference and utter disregard for the effect of its product upon the health, safety and rights of others,

and thereby acted wantonly and recklessly.

84. Accordingly, punitive damages should be awarded against Defendant.

## AS AND FOR A SECOND CAUSE OF ACTION: NEGLIGENCE

85. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "84" inclusive, as if more fully set forth herein at length.

86. At all times mentioned in this complaint, Defendant so negligently and carelessly manufactured, tested, marketed, and/or sold its black licorice products that they were dangerous and unsafe for their intended use.

87. Defendant knew or should have known that the black licorice products posed a health risk for consumers, and therefore was defective.

88. As consumers of its products, Defendant had a duty to warn Plaintiffs of the serious and latent dangers resulting from the foreseeable use of its products.

89. Defendant failed to warn Plaintiffs of the serious and latent dangers resulting from the foreseeable use of the black licorice products.

90. As a direct and proximate result of Defendant's negligence, Plaintiffs suffered the injuries and damage described above.

91. The injuries sustained by Plaintiffs were caused without any negligence on the part of Plaintiffs, but were due solely to the negligence, carelessness and recklessness of Defendant.

92. Accordingly, as a direct and proximate result of Defendant's negligence, Plaintiffs suffered general and special damages in an amount to be determined at trial, including for pain and suffering, mental anguish and emotional distress, disability, loss of enjoyment, loss of consortium, medical expenses, lost income, and loss of future earnings.

93. Additionally, because Defendant was aware for years of the risk that its product posed, but did nothing to change its ingredients or warn consumers of the danger of the product, Defendant demonstrated conscious indifference and utter disregard for the effect of its product upon the health, safety and rights of others, and thereby acted wantonly and recklessly.

94. Accordingly, punitive damages should be awarded against Defendant.

**WHEREFORE**, Plaintiffs demand that a judgment be entered against Defendant and in favor of Plaintiffs for general damages, special damages, and punitive damages in an amount to be proven at trial; together with pre-judgment and post-judgment interest; attorneys' fees, the costs and disbursements of the within action, and such other, further and different relief which this Court deems just and proper.

Dated: July 15, 2021

Respectfully submitted:

By: **/s/ WALTER T. GRABOWSKI**
WALTER T. GRABOWSKI, ESQUIRE
ID: PA28296

Attorneys for Plaintiffs

61 N. Washington Street
Wilkes-Barre, PA 18701
(570) 606-6100
Attorney ID Number 28296