IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JANE LAVOIE-FERN, et al.,** | : | Civil No. 1:21-CV-1245 |
| Plaintiffs, | : | |
| v. | : | |
| **THE HERSHEY COMPANY,** | : | |
| Defendant. | : | Judge Sylvia H. Rambo |

# M E M O R A N D U M

Before the court is Defendant The Hershey Company's motion to dismiss the complaint for failure to state a claim. (Doc. 8.) For the reasons set forth below, the motion will be denied.

## I.   BACKGROUND

The following facts from the complaint are taken as true for the purpose of resolving Hershey's motion. Hershey produces and sells certain black licorice products, including black licorice Twizzlers and Good & Plenty candies, which contain glycyrrhizin, a sweetening compound derived from licorice roots. (Doc. 1 ¶¶ 9–10.) At certain levels of consumption, glycyrrhizin has been shown to have harmful effects on the body and cause abnormal heart rhythms, high blood pressure, edema or swelling, lethargy, and congestive heart failure (*Id.* ¶¶ 12, 15–16.)

Plaintiffs Jane Lavoie-Fern, Sherry Konwaler, Harvey Horowitz, and Marie Bruen allege that they consumed Hershey's black licorice candies and that the

glycyrrhizin in the products caused them to suffer various injuries. (*Id.* ¶¶ 1–4, 25–70.) They assert claims for strict products liability and negligence based on Hershey's failure to warn consumers about glycyrrhizin's health risks. (*Id.* ¶¶ 72–75, 88–89.) Hershey has filed a motion to dismiss the complaint, which argues that Plaintiffs' claims are expressly preempted under the Nutrition Labeling and Education Act of 1990 ("NLEA"). (Doc. 9 at 10.) The motion has been fully briefed and is ripe for review.

## II.  STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). In reviewing a 12(b)(6) motion, the court must "accept as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them." *Taksir v. Vanguard Grp.*, 903 F.3d 95, 96–97 (3d Cir. 2018) (citation omitted). The facts alleged must be "construed in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (internal quotations, brackets, and ellipses omitted). But "[t]he court is not required to draw unreasonable inferences" from the facts. 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004).

The Third Circuit has detailed a three-step process to determine whether a complaint meets the pleading standard. *Bistrian v. Levi*, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. *Id.* at 365. Second, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id.* Third, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III. DISCUSSION

Hershey's motion argues that Plaintiffs' claims should be dismissed because they are expressly preempted by the NLEA.[1] The doctrine of preemption is derived from the Supremacy Clause of the United States Constitution, which prescribes that the laws of the United States "shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. The doctrine operates to invalidate laws that "interfere with, or are contrary to, federal law." *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985) (quoting *Gibbons v. Ogden*, 22 U.S. 1 (1824)).

---

[1] Hershey also moves to dismiss Plaintiffs' claim that it should not have used glycyrrhizin. (Doc. 9 at 16–17.) Plaintiffs' brief in opposition denies asserting any such claim. (*See* Doc. 16 at 16–18.) To the extent that such a claim has been raised, it is dismissed without prejudice.

3

Three principal forms of preemption exist: express preemption, field preemption, and conflict preemption. *Roth v. Norfalco LLC*, 651 F.3d 367, 374 (3d Cir. 2011) (citing *Farina v. Nokia, Inc.,* 625 F.3d 97, 116 (3d Cir. 2010)). Express preemption arises when a federal law "contains language so requiring" and is explicit regarding its preemptive effect. *Id.* (citations omitted). Field preemption occurs "by implication when Congress regulates a domain so pervasively that it leaves no room for state regulation." *Id*. (citing *United States v. Locke*, 529 U.S. 89, 111 (2000)). And conflict preemption applies "either where it is impossible to comply with both state and federal requirements . . . or 'where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (internal citation omitted) (quoting *Kurns v. A.W. Chesterton Inc.*, 620 F.3d 392, 395–96 (3d Cir. 2010)).

In determining whether a statute is preempted, "the purpose of Congress is the ultimate touchstone." *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 335 (3d Cir. 2009) (quoting *Altria Group, Inc. v. Good*, 555 U.S. 70 (2008) (internal quotation omitted)). "In areas of traditional state regulation, we assume that a federal statute has not supplanted state law unless Congress has made such an intention clear and manifest."[2] *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005) (internal

---

[2] The Third Circuit has determined that this presumption against preemption applies in assessing whether a state law is expressly preempted, notwithstanding the Supreme Court's pronouncement

quotation marks omitted). This presumption against preemption imposes a duty on the court when interpreting an ambiguous statute "to accept the reading that disfavors pre-emption." *Holk*, 575 F.3d at 334 (quoting *Bates*, 544 U.S. at 449). The NLEA amends the Federal Food, Drug, and Cosmetic Act, which tasks the Food and Drug Administration ("FDA") with ensuring that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A). The purpose of the NLEA amendment was to "clarify and to strengthen [the FDA's] authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about the nutrients in foods." *Nat'l Council for Improved Health v. Shalala*, 122 F.3d 878, 880 (10th Cir. 1997) (quoting H.R. Rep. No. 101–538, at 7 (1990)).

Under § 343(i)(2) of the NLEA, labels of food covered under the statute must list the "common or usual name" of each ingredient contained in the food, "in descending order of predominance by weight." 21 U.S.C. § 343(i)(2); 21 C.F.R. § 101.4(a)(1). The NLEA contains an express preemption provision that prohibits states from directly or indirectly imposing "any requirement for the labeling of food of the type required by [§ 343(i)(2)] that is not identical to [that subsection's] requirement." 21 U.S.C. § 343-1(a)(2). Despite the expansive language of this

---

in a bankruptcy case, an area of law not traditionally regulated by the states, that the presumption does not apply to express preemption. *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 132 n.5 (3d Cir. 2018) (discussing *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115 (2016)).

preemption provision, the statute contains a broadly worded safety exception that limits its scope, by directing that the preemption clause "shall not be construed to apply to any requirement respecting a statement in the labeling of food that provides for a warning concerning the safety of the food or component of the food." Pub. L. No. 101–535, § 343-1(c)(2).

As an initial matter, Plaintiffs' failure to warn claims are governed by the presumption against preemption. Matters of safety and public health, and specifically "the regulation of food and beverage labeling and branding," have "traditionally fallen within the province of state regulation." *Holk*, 575 F.3d at 334–35 (applying presumption to state law claims arising from beverage manufacture's misuse of the term "all natural" on its product labels). Hershey does not dispute the traditional role that states have played in the regulation of food labeling or otherwise substantively argue that the presumption should not apply in these circumstances. Accordingly, its express preemption argument "must overcome the presumption against preemption," and if the court is confronted with two plausible interpretations of the NLEA, it is required to accept the reading that disfavors preemption. *Id.* (quoting *Bates,* 544 U.S. at 449).

Hershey's motion fails to overcome the presumption against presumption. Assuming for the sake of argument that Plaintiffs' claims fall within the scope of the NLEA's express preemption provision, they are saved from preemption under the

6

statute's safety exception. Plaintiffs' state law claims allege that Hershey failed to warn black licorice customers about the health risks of consuming glycyrrhizin or too much glycyrrhizin, which include abnormal heart rhythms, high blood pressure, swelling, lethargy, and congestive heart failure. (*See* Doc. 1 ¶¶ 12, 58–61, 73, 80, 83.) The central question raised by each of Plaintiffs' claims is therefore whether, under the circumstances, Pennsylvania law requires Hershey to provide a safety warning on the label of its black licorice products regarding the health risks associated with one of the product's components. And to the extent such a requirement is established, it would fall squarely within the language of the NLEA's safety exception as a "requirement respecting a statement in the labeling of food," which "provides for a warning concerning the safety of the food or component of the food." Pub. L. No. 101–535, § 343-1(c)(2); *see Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 801 (N.D. Cal. 2015) ("[T]he NLEA carves out an exemption from its express preemption clause where *warnings* concerning the *safety* of food or component of food are at issue.") (emphasis original).

While Hershey's motion stresses that the FDA has found glycyrrhizin to be generally regarded as safe ("GRAS"), it offers no principled basis for concluding that such a determination precludes application of the safety exception. The plain language of the statute makes clear that the safety exception applies to "any" state food labeling requirement, so long as the requirement calls for "a warning

concerning the safety" of the food or one of its components. Pub. L. No. 101–535, § 343-1(c)(2). Nothing in the text of the safety exception, or its surrounding provisions, can be reasonably interpreted as limiting the exception's reach to warnings about food and food additives that have not received GRAS status. And nothing in the statute provides any indication that Congress intended to save from preemption only those food label warning requirements that conform with the prior findings and statements of the FDA. *Cf. Sciortino*, 108 F. Supp. 3d at 803 ("[The safety exception's] wording applies to all such state [requirements], without regard to whether the FDA has made a finding to the contrary."). Tension may very well exist between Plaintiffs' failure to warn claims and the FDA's GRAS designation of glycyrrhizin, but as the Third Circuit has explained, the NLEA's statutory scheme was deliberately designed to tolerate such tension:

> [The NLEA's preemption and safety exception] provisions demonstrate that Congress was cognizant of the operation of state law and state regulation in the food and beverage field, and it therefore enacted limited exceptions in NLEA. As the Supreme Court instructed in *Levine*, "the case for federal pre-emption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there is between them."

*Holk*, 575 F.3d at 338 (quoting *Wyeth v. Levine*, 555 U.S. 555, 575 (2009)).

Hershey's resistance to this principle, and its contention that the safety exception does not apply to food components that have obtained GRAS designation,

relies on a single decision from the Western District of Missouri.[3] In *In re Bisphenol-A*, the district court held that a plaintiff's state law fraudulent omission and consumer protection claims, which alleged that the defendant failed to warn of safety risks associated with an industrial chemical used in plastic, were expressly preempted under the NLEA based on a prior finding by the FDA that the chemical was safe. *In re Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig.*, No. 08-CV-1967, 2009 WL 3762965, at *6 (W.D. Mo. Nov. 9, 2009). The court deferred to the FDA's prior safety findings and declined to apply the safety exception. *Id.* The court reasoned that its interpretation was necessary in order to effectuate Congress's intent, as conveyed in the NLEA's express preemption provision, "that states occupy a more restricted role in the context of food ingredient labeling." *Id.*

With respect, the Western District of Missouri's reasoning is not persuasive. In this court's view, where a broad statutory provision is followed by a broad exceptions clause, the mere breadth of the first provision, standing alone, is not a

---

[3] Hershey's motion also cites to *Mills v. Giant of Maryland, LLC*, 441 F.Supp. 2d 104, 108–09 (D.D.C. 2006) *aff'd*, 508 F.3d 11 (D.C. Cir. 2007), but its reliance on the case is misplaced. The court in *Mills* declined to apply the safety exception to state law negligence and products liability claims, which alleged that the defendant failed to warn lactose intolerant customers about the risk of suffering gastrointestinal irritation from its company's milk. *Id.* at 109. The court did so, however, because it found that the warning sought by the plaintiffs was not one "concerning the safety of" milk at all. *Id.* In this case, by contrast, Hershey does not meaningfully challenge that Plaintiffs' claims arise from its alleged failure to provide "a warning concerning the safety of" glycyrrhizin. Its preemption argument goes to the state imposition of a non-identical labeling requirement, not the classification of that labeling requirement as a warning about safety. *Cf. Sciortino*, 108 F. Supp. at 802.

9

valid basis for interpreting the second clause in a manner that substantially narrows its ordinary meaning. Other than its citation to *Mills* (*see supra*, n.3) and description of the broad language found in the NLEA's express preemption provision, the *In re Bisphenol-A* court did not identify any statutory text, legislative history, or judicial authority that would tend to support such a narrow interpretation of the safety exception.[4] On the contrary, the unambiguous text of the safety exception shows Congress's intent to "preserve an important role for states when it comes to safety warnings." *Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616, 625 n.5 (4th Cir. 2015). Hershey has not illuminated any principled path for this court to conclude that the NLEA preempts states from requiring safety warnings on food labels merely because the FDA has found the constituent ingredients to be GRAS.

In short, Hershey's motion urges the court to interpret the statute in a way that is not plausible. Even if it were, the safety exception creates a reasonable alternative interpretation prohibiting preemption, which the presumption against preemption requires this court to accept, absent Congress's "clear and manifest" intent to preempt. *See Holk*, 575 F.3d at 334–35; *Bates*, 544 U.S. at 449. Finding the proffered evidence of Congress's intent to be woefully insufficient, the court will deny Hershey's motion.

---

[4] While neither *Mills* nor *In re Bisphenol-A* courts discuss the NLEA's legislative history, the *Sciortino* court provides a rather comprehensive and compelling overview that supports a broad reading of the safety exception. *See Sciortino*, 108 F. Supp. 3d at 803–04.

## IV. CONCLUSION

For the reasons set forth above, Defendant Hershey's motion to dismiss the complaint will be denied. An appropriate order shall follow.

*s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

Dated: July 11, 2022